## PRICE'S LESSEE v. JOHN SULLIVAN.

Supreme Court. October, 1807.

*Wells' Notebook, 348.*

*Vandyke* and *Cooper* for plaintiff urged that this was an ancient paper and that it was found among the papers transferred from the Land Office in Pennsylvania to the proper office in this county. It is evidence under the Act of Assembly [2 Del.Laws 1166] respecting the transfer of those records.

*Bayard* for defendant. No compass to steer by but the rules of evidence; adherence to these rules is the great safeguard of personal as well as real rights. A deed when produced has great weight and importance in a court of justice when received, and the party producing it ought to submit to the indispensable condition of proving it. We are likewise at issue on the evidence; we have no proof that one of the witnesses is dead. The court, in Espinasse, indignantly rejected the proof of the handwriting

of the party when evidence of the handwriting of the witnesses could be had. As to the paper coming from an office—suppose the Recorder should copy a deed not executed, shall it be evidence? I knew an instance of a person who had lost his ear by accident and not in punishment. Drawing in a certificate and procuring it to be signed by several, he caused it to be recorded. Suppose this person had afterwards instituted an action of slander against another, would a copy of the record be good evidence for the plaintiff?

PER CURIAM. JOHNS, J. It does not appear that this paper has passed through the hands of the agent appointed by the State; and therefore, not being regularly proved, it is incompetent evidence.

The Court seemed to intimate an opinion that papers which passed through the hands of the state agent in transferring them from the offices in Pennsylvania to the office here might be evidence.

Plaintiff offers a certificate of survey in evidence. Upon examination it appeared to be a copy of the original survey and was withdrawn. Thereupon the same party produced a book from the Recorder's office, containing a copy of the above survey. Objected to for defendant. The paper copied is in itself not evidence; of course the book when it is copied cannot be evidence.

*Vandyke.* From the patent read there appears to be a certificate of survey; 2 Del.Laws 1163, general power in this Act to the Recorder to copy these.

*Bayard* for defendant. The Commissioners are invested with the power of making an inchoate title complete. But the inchoate title must be shown to the Commissioners of the Land Office to give them jurisdiction; otherwise they might receive and put on record a paper which would affect the title to thousands of acres, and yet the paper itself recorded might not be an original. If there is no power to record, the record is no evidence. Of this instrument, the copy of the Recorder is no evidence, because it is but a copy of a copy.

PER CURIAM. JOHNS, J. The Court has no doubt that a recorded copy of a copy is not evidence.

It came out in testimony that the above certificate of survey was not the original certificate of survey on the warrant, but that subsequent to the original certificate of survey new surveys were made in order to parcel out the land under this warrant

to several persons, and the certificate of survey offered is only in part execution of the said warrant. I was not present when *Vandyke,* for plaintiff, noticed this objection, but came in as *Bayard,* for defendant, was speaking. There is, said he, a wide difference between the acts of private individuals and public officers. The general certificate of survey is the act of the officer; these several surveys are the acts of individuals and not officers. This is an *ex parte* act, the act of an individual. Can it prejudice the opposite party? The general public survey is on Shankland's books acting as a private surveyor. It was his duty to follow the orders of his employer. Whether those orders are or are not incorrect is a piece of evidence created by the party himself to be profited of by the party whose act it is? Is any man allowed to create evidence for himself?

PER CURIAM. JOHNS, J. The paper now offered is competent evidence for some purpose. That a second survey cannot be made under a warrant is correct, but when two or more claim under the same warrant, 2 Del.Laws 1176 s. 3, on titles from 1776 to 1792, there is by this section vested in the Commissioners of the Land Office an authority of granting a certificate to either of the parties; and they must specify the quantity of land held by each party. This is a legislative warrant to make a new survey for each party. This was intended by the Commissioners to determine what quantity Teachler, under whom the plaintiff held, should have; but if the land in controversy was vacant, the certificate of survey is sufficient for the party to derive a title from the State. Of course the counsel for the plaintiff may use the paper for such purposes.

A deed, dated April 14, 1775, in Maryland for land here was offered. Objected to by *Bayard* for defendant. No law of Maryland operates in Delaware after the date of the proclamation, which was April 8, 1775. This deed purports to be executed here and acknowledged in Maryland. Proclamation was issued to announce what before pre-existed. A positive law of this State was necessary to give effect and operation on certain points to the laws of Maryland up to the date of the proclamation [1 Del. Laws 587]. See 1 Del.Laws [567] as to the date of the agreement between Lord Baltimore and Mr. Penn. Act of Assembly gives effect to judgment, etc., obtained in Maryland up to the date of the proclamation on April 8, 1775.